UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**TANYA M.S.,**

                        **Plaintiff,**                          **20-CV-1879Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #26

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on June 22, 2018, alleging disability beginning June 1, 2017, at the age of 19, due to major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and attention deficit disorder ("ADD"). Dkt. #10, pp.47-48 & 132.

On December 20, 2019, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Brianne Lott, at an administrative

hearing before Administrative Law Judge ("ALJ"), Sharda Singh. Dkt. #10, pp.31-46. Plaintiff testified that she has lived at Community Missions for two years at the suggestion of her case worker and counselor who felt that she wasn't stable. Dkt. #10, p.38. Community Missions helps her take her medication and takes her to appointments. Dkt. #10, p.38. She attends therapy every week, as well as an anger management group; self-esteem group; stages of change group; and a happiness group. Dkt. #10, p.37. Plaintiff testified that her "moods go up and down" as a result of her bipolar disorder, causing her to lash out at people and get violent or stay in her room and isolate for weeks on end. Dkt. #10, p.36. When she is depressed, she sleeps a lot; when she is manic, she is "all over the place." Dkt. #10, p.37. She testified that sometimes she gets really anxious and paces back and forth in her room all day with "a million thoughts going through [her] head." Dkt. #10, pp.37-38. In a typical week, plaintiff estimated that she has four bad days where she is agitated and rude to people and has difficulty tending to her personal needs. Dkt. #10, p.40.

Plaintiff testified that she keeps her room clean, washes laundry when she can and enjoys cooking and baking. Dkt. #10, pp.39 & 42. She can go to the grocery store, but gets in and out as fast as she can because she doesn't like waiting around or being in crowds. Dkt. #10, p.40. She described her symptoms as stable, but noted that she still has difficult days. Dkt. #10, p.41. Plaintiff was in special education classes in high school because of difficulty concentrating and paying attention. Dkt. #10, p.36. She attempted college classes for dietetic studies, but "got really overwhelmed," dropped out and became depressed. Dkt. #10, pp.36 & 40. She attempted a part-time

housekeeping position, but could not continue after three months because of her anxiety. Dkt. #10, p.35.

The VE classified plaintiff's past work as kitchen helper, an unskilled, medium exertion position. Dkt. #16, p.51. When asked to assume an individual with plaintiff's age, education and lack of work experience with no exertional limitations but limited to routine, repetitive, non-complex tasks in a low-stress environment with occasional decision making, judgment, changes in work setting and interaction with coworkers, supervisors and the public, the VE testified that plaintiff could work as a screen printing machine operator helper; packager; or label coder, each of which are unskilled positions. Dkt. #10, p.44. The VE testified that plaintiff would be precluded from substantial gainful employment if she was off task 15% or more of the workday. Dkt. #10, p.44.

The ALJ rendered a decision that plaintiff was not disabled on February 5, 2020. Dkt. #10, pp.14-26. The Appeals Council denied review on October 26, 2020. Dkt. #10, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 18, 2020. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant seeking SSI must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that the claimant is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that the claimant has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. §

416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of June 22, 2018; (2) plaintiff's post-traumatic stress disorder ("PTSD"), bipolar disorder and ADHD constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform simple, routine, repetitive and non-complex work in a low stress environment at all exertional levels with occasional decision making changes in the work setting, occasional judgment, occasional contact with supervisors, coworkers and the general public, and no crowds; and (5) plaintiff was capable of working as a screen printing machine operator helper or packager, each of which were unskilled, medium exertion positions or as a label coder, which was an unskilled, light exertion position, and was not, therefore, disabled within the meaning of the SSA. Dkt. #110, pp.17-26.

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence against medical listing 12.04 at step three of the sequential evaluation. Dkt.

#19-1, p.10. Plaintiff also argues that the ALJ failed to afford appropriate consideration to the fact that she exhibited significant mental impairment despite residing in a structured setting throughout the duration of her application for disability or to properly evaluate opinions of marked limitations by medical providers during this time. Dkt. #19-1, pp.12-13. Plaintiff specifically challenges the ALJ's determination that someone residing in a structured living environment following a psychiatric hospitalization could be deemed to have only a mild limitation in adapting or managing oneself and questions the ALJ's reliance upon a state agency review psychologist over plaintiff's treating psychiatrist. Dkt. #19-1, pp.13 & 18-19.

The Commissioner responds that the ALJ referenced plaintiff's living arrangements while assessing her RFC and properly relied upon the opinion of a non-examining psychologist who determined that plaintiff was capable of substantial gainful employment despite her residential environment. Dkt. #20-1, pp.4-6. The Commissioner argues that the ALJ reasonably determined that the opinion of plaintiff's psychiatrist was not persuasive and that the ALJ's RFC is supported by substantial evidence. Dkt. #20-1, pp.7-11.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on

the following five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec'y*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c) & 20 C.F.R. § 416.920c(a) & (c).

To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain the ALJ's consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c) & 20 C.F.R. § 416.920c (b)(2). With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1) & 20 C.F.R. § 416.920c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2) & 20 C.F.R. § 416.920c(c)(2). Thus, supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec'y*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations

still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec'y*, 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

Plaintiff has the burden of proving that she meets the Listing requirements at step 3. *Naegele v. Barnhart*, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006). For a plaintiff to show that her impairment matches a listing, it must meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To show that she meets the criteria, plaintiff must offer medical findings equal in severity to all requirements and those findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. *Distefano v. Berryhill*, 363 F. Supp.3d 453, 465 (S.D.N.Y. 2019). Where the plaintiff's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the plaintiff failed to meet or equal the Listings. *Kuleszo v. Barnhart*, 232 F. Supp.2d 44, 52 (W.D.N.Y. 2002).

Listing 12.04[1] sets forth the medical criteria for affective disorders. Specifically, Listing 12.04 provides that the required level of severity for an affective disorder, which is characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome generally involving either depression or elation, is

---

[1] Modifications to Listing 12.04 became effective for all claims pending as of January, 17, 2017.

met when the requirements in both paragraphs A and B are satisfied, or when the requirements in A and C are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (hereinafter "12.04").

The ALJ's determination that plaintiff's bipolar disorder constitutes a severe impairment satisfies paragraph A. *See Gabriel v. Comm'r of Soc. Sec'y*, 6:18-CV-671, 2019 WL 4466983, at *8 n.8 (N.D.N.Y. Sept. 18, 2019).

Paragraph B of Listing 12.04 requires a finding of:

Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

A marked limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 12.00(F)(2)(d).

Plaintiff's psychiatrist at Niagara Visions PROS,[2] Jaime A. Pablonia, M.D., completed a Mental Impairment Questionnaire dated November 5, 2019, diagnosing

---

[2] The Personalized Recovery Oriented Services ("PROS"), program is a comprehensive model that integrates rehabilitation, treatment and support services for individuals with serious mental illnesses, with a goal of promoting independence and improving quality of life through, *inter alia*, social and basic life skills training, problem solving and coping skills, housing assistance, vocational training, clinical counseling and health assessment and symptom monitoring and medication management. www.omh.ny.gov

plaintiff with bipolar disprder, dysphoric mood dysregulation disorder, and PTSD. Dkt. #10, p.585. Dr. Pablonia identified the following symptoms: sleep disturbance; mood disturbance; emotional lability; substance dependence;[3] difficulty thinking or concentrating; social withdrawal or isolation; illogical thinking or loosening of associations; manic syndrome; hostility; and irritability. Dkt. #10, p.585. He noted that plaintiff received psychotropic medications and weekly counseling/clinical services (group and individual) with fair progress, which would likely need to continue due to her "persistent and severe mental illness." Dkt. #10, p.586. He opined that plaintiff's impairments would cause her to be absent from work about three times a month. Dkt. #10, p.587.  He opined that plaintiff would have a fair ability to maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately to criticism from supervisors; and deal with normal work stress, and poor or no ability to maintain attention for two hour segments; complete a normal workday and workweek without interruptions from psychologically based symptoms; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. Dkt. #10, pp.587-88. He explained that due to her poor concentration, isolation and irritability, plaintiff experiences difficulty responding appropriately to others, staying focused and managing stress. Dkt. #10, p.588. He opined that plaintiff was moderately limited in her ability to understand, remember or apply information, and markedly limited in her ability to interact with others; concentrate, persist or maintain pace; and adapt or manage

---

[3] Plaintiff reported that she smokes pot. Dkt. #10, p.594.

herself. Dkt. #10, p.589. Thus, plaintiff's psychiatrist opined that plaintiff experienced marked limitations in three of the four areas of mental functioning.

The ALJ found that Dr. Pablonia's opinion was not persuasive because "[t]he marked degree of limitation reported is not consistent with the mild to moderate consultative examination findings, the [plaintiff's] activities of daily living (including her ability to take public transportation and shop), or treatment records indicating an improved and generally stable psychiatric status with treatment compliance." Dkt. #10, p.24. Instead, the ALJ determined that plaintiff has a moderate limitation[4] in the first three categories and a mild limitation in the fourth category. Dkt. #10, p.20. In reaching this conclusion, the ALJ relied upon the opinion of the SSA's reviewing psychologist, T. Bruni, Ph.D., because it was "[b]ased on a thorough review of the medical records;" "supported by the consultative examination findings and consistent with the [plaintiff's] activities of daily living;" and "consistent with the later treatment notes." Dkt. #10, p.24.

Dr. Bruni opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions, but not significantly limited in her ability to understand and remember very short and simple instructions or to remember locations and work-like procedures; moderately limited in her ability to accept instructions and respond appropriately to criticism from supervirors and interact appropriately with the general public, but not significantly limited in her ability to ask simple questions, request assistance, get along with coworkers or maintain socially

---

[4] A moderate limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 12.00(F)(2)(c).

appropriate behavior and adhere to basic standards of neatness and cleanliness; moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and complete a normal workday and workweek without interruptions from psychological based symptoms; and moderately limited in her ability to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others, but not significantly limited in her ability to be aware of normal hazards and take appropriate precautions or travel in unfamiliar places or use public transportation. Dkt. #10, pp.56-57. His opinion noted that plaintiff was currently living in a group facility for individuals with mental health problems and recognized her current mental health outpatient treatment and history of inpatient mental health treatment and special education services. Dkt. #10, p.54. Dr. Bruni also referenced the independent psychiatric evaluation by Dr. Farmer. Dkt. #10, p.54. Dr. Bruni's opinion was dated September 20, 2018. Dkt. #10, p.54.

Stephen Farmer, Psy.D., completed the independent psychiatric evaluation referenced by Dr. Bruni on August 14, 2018. Dkt. #10, p.325. Dr. Farmer noted that plaintiff resided in a group home for individuals with mental health issues and that she graduated high school with a history of learning disabilities. Dkt. #10, p.325. Plaintiff reported

> Depressive symptomology remarkable for dysphoric moods, irritability, diminished self-esteem, concentration difficulties, and social withdrawal. [Plaintiff] attributes much of her depression as a consequence of having been physically abused as a child. . . . Anxiety-related symptoms are remarkable for excessive apprehension and worry and

> difficulty concentrating. . . . [Plaintiff] reports a history of having been physically abused by her parents as a child, but denied trauma symptoms. She feels that the abuse experience manifests more as depression rather than specific trauma-related symptoms. . . . Manic symptomatology remarkable for inflated self-esteem, grandiosity, psychomotor agitation, and flight of ideas. [Plainitff] has also been in multiple physical fights and tends to pace excessively. . . . Cognitive symptomatology/deficits: Short-term and long-term memory deficits as well as concentration difficulties.

Dkt. #10, pp.325-26. Plaintiff was observed to be "somewhat immature, but generally cooperative," with a fair "manner of relating and social skills." Dkt. #10, p.326. She was further observed to be "mildly agitated" with "a tinge of irritability." Dkt. #10, p.326. Her attention and concentration was mildly impaired. Dkt. #10, p.327. Due to her history of impulsivity and acting out of aggression, her judgment was deemed poor. Dkt. #10, p.327. Dr. Farmer opined that plaintiff exhibited

> No evidence of limitation with understanding, remembering, and applying simple directions or instruction; or with understanding, remembering, and applying complex directions or instruction. Evidence of mild to moderate limitation in using reasoning and judgment to make work-related decisions. Evidence of moderate limitation with interacting adequately with supervisors, co-workers, and the public. Evidence of moderate limitation with sustaining concentration and performing a task at a consistent pace. Evidence of moderate limitation with sustaining an ordinary routine and regular attendance at work. Evidence of moderate limitation in regulating emotions, controlling behavior, and maintaining well-being. Evidence of mild limitation with maintaining personal hygiene and appropriate attire. Evidence of mild limitation with awareness of normal hazards and taking appropriate precautions. Difficulties are caused by depression and hypomanic and/or manic symptoms.

Dkt. #10, p.328. Dr. Farmer diagnosed plaintiff with rule out bipolar II disorder, fairly well controlled with current treatment. Dkt. #10, p.328. He opined that her prognosis was fair

and recommended assistance in managing funds due to her impulsivity and lapses in good judgment. Dkt. #10, p.328.

The ALJ's determination that plaintiff suffered only a moderate limitation in her ability to interact with others and her ability to adapt or manage herself is not supported by substantial evidence. More specifically, the SSA reviewing psychologist's review of evidence was inconsistent with the record and encompassed only a portion of the duration of plaintiff's application. In contrast, the opinion of plaintiff's treating psychologist, which was rendered less than three months prior to the ALJ's decision, was supported by his longitudinal assessment of plaintiff's symptoms over the course of seven months and consistent with the entirety of the evidence of record, as set forth below.

Plaintiff experienced numerous hospitalizations through BryLin Hospital in 2010, 2011 and 2012. Dkt. #10, p.256. Plaintiff spent her freshman year of high school during 2012-2013 at the Western New York Children's Psychiatric Center and attended the Children's Psychiatric Center Day Treatment Program for her Sophmore year during 2013-2014. Dkt. #10, pp.252 & 256. Plaintiff attended the Stanley G. Falk School for her Junior year where she was in a 6:1+1 class setting with weekly individual and small group counseling. Dkt. #10, p.241. It was noted that plaintiff was diagnosed with reactive attachment disorder and alcohol related neurological disorder. Dkt. #10, p.241. As a consequence of these diagnoses, plaintiff required a comprehensive structured educational environment with clearly defined rules and consequences that are

consistently enforced. Dkt. #10, p.246. It was also noted that she needed to be involved in school counseling to address social/emotional needs. Dkt. #10, p.246. During her Senior year, plaintiff was admitted to Niagara Falls Memorial Medical Center for psychiatric treatment February 27-29, 2016 with diagnoses of major depressive disorder after it was discovered that she was cutting herself. Dkt. #10, p.266. Although plaintiff graduated high school in June of 2016, she was referred to Catholic Charities on October 5, 2016 to address homelessness due to her poor relationship with her adoptive mother, who reported that she is "defiant, disrespectful, intellectually limited, and lacks initiative and basic living skills." Dkt. #10, pp.339, 365, 349 & 443. Individual therapy was recommended to address independent living skills; family and peer relationships, oppositional tendencies; anger; and symptoms of ADHD. Dkt. #10, p.349. Plaintiff was admitted to Niagara Falls Memorial Medical Center August 10-16, 2017 with a diagnosis of depressive disorder and personality disorder after admitting to her mental health counselor thoughts of self harm and harm to her roommate's boyfriend. Dkt. #10, p.273.

Plaintiff was accepted into Community Missions, a Level II Congregate Care New York State Office of Mental Health Facility, on November 20, 2017. Dkt. #10, pp.222 & 366. Rebecca Ujeski, Program Manager, completed a Third Party Function Report on July 2, 2018 - one month prior to Dr. Farmer's consultative psychiatric evaluation – based upon her nine month relationship with plaintiff. Dkt. #10, p.222. Ms. Ujeski reported that she works with plaintiff regarding her mental health daily. Dkt. #10, p.22. Ms. Ujeski indicated that plaintiff struggles with focusing and has anger

management issues as well as severe depression at times. Dkt. #10, p.222. Ms. Ujeski reported that plaintiff struggles with counting and budgeting her money. Dkt. #10, p.225. Although plaintiff cooks breakfast 2-3 times per week and sometimes helps staff cook dinner; washes her own laundry; cleans; and takes daily walks, Ms. Ujeski reported that plaintiff has issues following rules and becomes anxious and sometimes angry when stressed. Dkt. #10, pp.224-225 &, 227. Ms. Ujeski explained that plaintiff

> has a hard time with coping with her mental illness and moving forward from her struggles she has had since she was a child. [Plaintiff] does not get along well with most people and gets upset and angry very easily. She also has a lot of trouble concentrating for more than 10-15 minutes.

Dkt. #10, p.228.

Although she enrolled in Niagara County Community College for the 2018 Fall Semester to study dietetics, that was short-lived. Dkt. #10, pp.36, 40 & 534.

On March 22, 2019 – seven months after Dr. Farmer's consultative psychiatric evaluation and Dr. Bruni's review of plaintiff's medical record – plaintiff was accepted into PROS Dkt. #10, p.585. Despite a treatment plan goal of building positive relationships, it was noted that plaintiff had not made one positive relationship during a six month period. Dkt. #10, p.598. Progress notes also mention plaintiff's difficulty coping with roommate and neighbors and altercations with other residents Dkt. #10, pp.595, 598. Progress notes indicate that plaintiff generally attended scheduled services, but skips when she does not feel like attending. Dkt. #10, p.595. Plaintiff acknowledged that she struggles with controlling her anger and uses self-isolation to

avoid negative interactions with other residents and staff. Dkt. #10, p.595. Sally Ferrigno, L.M.S.W., prepared a treatment note dated March 13, 2019 indicating that plaintiff

> wants to live a safe productive life and may be discharged when she has strengthened her ability to develop positive peer network, manage anger appropriately and manage symptoms of ADHD. . . . Increased level of care may be indicated to improve independent function and living skills . . .

Dkt. #10, p.507.

As is evident from this exhaustive recitation of the record, the ALJ's determination that "the record does not establish that [plaintiff] suffers from debilitating psychiatric impairments" (Dkt. #10, p.23), is not supported by substantial evidence. To the contrary, Dr. Pablonia's opinion that plaintiff suffers a marked limitation in her ability to interact with others and adapt or manage herself is both consistent with and supported by the evidence of record. *See, e.g., Lacherie C. v. Kijakazi*, 20-CV-1212, 2022 WL 2948977 (W.D.N.Y. July 26, 2022) (finding plaintiff disabled where substantial evidence established marked limitations regarding adaptive functioning area of interacting with others and managing or adapting oneself). Where, as here, application of the correct legal standards to all of the relevant evidence, compels the conclusion that plaintiff meets the criteria for Listing 12.04, remand for calculation of benefits is warranted. *See Trumpower v. Colvin*, 6:13-CV-6661, 2015 WL 162991, at *18 (W.D.N.Y. Jan. 13, 2015) (remanding for calculation of benefits based upon medical source opinion of Licensed Master Social Worker).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #20), is granted and this matter is remanded for the calculation of benefits and the Commissioner's motion for judgment on the pleadings (Dkt. #22), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:     Buffalo, New York
             September 28, 2022**

                                                  _s/ H. Kenneth Schroeder, Jr._
                                                  **H. KENNETH SCHROEDER, JR.
             United States Magistrate Judge**